IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BEVERAGE MANAGEMENT SYSTEMS, INC.,**<br><br>        Plaintiff,<br><br>    v.<br><br>**ROBERT OTT,**<br><br>        Defendant. | Case No. 3:12-cv-2126-SI<br><br><br>**OPINION AND ORDER** |

David J. Sweeney, Paul G. Dodds, Brownstein Rask, 1200 S.W. Main Street, Portland, OR 97223. Attorneys for Plaintiff.

Keith S. Dubanevich, Nadine A. Gartner, Stoll Stoll Berne Lokting & Schlachter P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97205. Attorneys for Defendant.

**SIMON, District Judge**.

Plaintiff Beverage Management Systems, Inc. brings suit against Defendant Robert Ott, alleging breach of the Employment Agreement dated December 31, 2007, entered into by the parties ("Employment Agreement"). Ott's employment terminated on or about December 31, 2009. Plaintiff alleges that Ott breached the "Covenants by Employee" clause of the

Employment Agreement, which Plaintiff alleges is in effect for three years after the termination of the Employment Agreement. Ott filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. 7. Ott filed a second motion to dismiss, arguing that this case should be dismissed under the common law doctrine of *forum non conveniens* or, alternatively, that venue should be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Hampshire. Dkt. 11.

For the reasons stated below, this case is transferred to the United States District Court for the District of New Hampshire.

## BACKGROUND

In considering a motion to dismiss for lack of personal jurisdiction, a court must accept uncontroverted facts alleged in the Complaint as true and must resolve any factual disputes in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court follows those requirements in setting forth the facts below.

Plaintiff entered into an Asset Purchase Agreement, dated December 31, 2007, with Ott, Ott's wife, and their company, Tru Measur Manufacturing Corporation, under which Plaintiff purchased certain assets of Tru Measur. Tru Measur was a New Hampshire company. Under the Asset Purchase Agreement, Plaintiff and Ott also agreed to execute an Employment Agreement at the closing of the asset purchase transaction.

As contemplated in the Asset Purchase Agreement, Plaintiff and Ott executed the Employment Agreement, effective December 31, 2007. The term of the Employment Agreement was January 1, 2008, through January 1, 2010. Both parties undertook duties and obligations under the Employment Agreement.

Under the Employment Agreement, Plaintiff agreed to: (1) employ Ott as General Manager of the New England Region; (2) pay Ott a base salary; (3) allow Ott to participate in the company's health and benefit plans; (4) reimburse Ott's expenses; and (5) provide Ott with paid vacation, holiday, and sick time. Emp. Agm. ¶¶ 2, 4 (Ott Decl. Ex. B). Also under the Employment Agreement, Ott: (1) agreed to perform the duties and obligations of his employment position; (2) agreed not to engage in certain competitive conduct for the term of the Employment Agreement plus three years thereafter; (3) acknowledged that Plaintiff may disclose confidential information and trade secrets to him; (4) undertook certain obligations with respect to any confidential information for the term of the Employment Agreement plus three years; (5) undertook certain obligations with respect to any trade secrets for as long as such information remained a trade secret; and (6) agreed that all work product shall be owned by Plaintiff and agreed to assign to Plaintiff all rights to any work product that could not be considered owned by Plaintiff. *Id*. ¶¶ 2, 5, 6, 7. The governing law for the Employment Agreement is New Hampshire. *Id*. ¶ 12.

Plaintiff negotiated the Employment Agreement primarily from Oregon, although Plaintiff sent a representative to New Hampshire for part of the negotiations. Ott negotiated the Employment Agreement from New Hampshire. It was executed by Plaintiff in Oregon and Ott in New Hampshire. During the term of the Employment Agreement, Ott performed his duties and obligations in New Hampshire. Although Ott did not travel to Oregon, he was in regular communication with Plaintiff's office in Oregon, including three or four telephone calls per week and several faxes per month. Plaintiff paid Ott's salary from Plaintiff's office in Oregon.

After Ott's employment terminated, Plaintiff discovered that Ott sold liquor dispensing items to Damon Industries, a Nevada corporation. Damon Industries, in turn, sold those items to

Page 3 – OPINION AND ORDER

Thunder Valley Casino and Resort in Lincoln, California. Plaintiff alleges these sales by Ott violated the Employment Agreement.

Ott is 84 years old and suffers from advanced emphysema, which prevents him from traveling by airplane. His wife suffers from terminal cancer and Ott is her primary caregiver, making it extremely difficult for him to leave her for extended periods of time. Ott resides in New Hampshire, where he has lived for 36 years. He has not traveled to Oregon in more than ten years, does not own property in Oregon, and does not transact business in Oregon.

## STANDARDS

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *See Schwarzenegger*, 374 F.3d at 800 (citing *Scher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quotations and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (quotations omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). A plaintiff cannot solely rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Id*. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id*. (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

On a motion to transfer venue under 28 U.S.C. §1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The forum to which transfer of venue is sought must be a district court where the case "might have been brought." *Id*. Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations and citation omitted); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

## DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. Pro. 4(L); *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212 (Or. 1982). Thus, this Court need only determine whether its exercise of personal jurisdiction over Ott would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *see also Hydraulic Servocontrols*, 294 Or. at 384-85 (1982).

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id*. at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and

orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-74. Here, Plaintiff concedes that the Court does not have general jurisdiction over Ott and alleges only specific jurisdiction.

The Ninth Circuit applies a three-part test to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden as to the first two prongs, but if both are established, then "the defendant must come forward with a 'compelling case' that the

exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Brayton Purcell*, 606 F.3d at 1128; *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). Here, Plaintiff's case sounds in contract; thus the first prong shall be analyzed under purposeful availment.

### 1. Purposeful availment to establish minimum contacts with Oregon

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quotations and citation omitted). In cases involving contractual obligations, the Supreme Court emphasizes "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotations and citations omitted). The court's review of the contractual relationship must be "practical and pragmatic." *Boschetto*, 539 F.3d at 1016. A court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant purposefully established minimum contacts within the forum. *Burger King*, 471 U.S. at 479.

An "individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original). Parties to an interstate contract who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quotations and citation omitted). This continuing relationship must create a "substantial connection" between the defendant the forum state that is more than merely "random, fortuitous or attenuated." *Id*. at 479-80.

A defendant whose interstate contract contemplates "significant future consequences" in another state has the requisite continuing relationship with the parties to the contract in that state. *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (citations omitted). Similarly, a defendant who created continuing obligations to residents of another state has satisfied the "purposeful availment" requirement. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Conversely, a continuing relationship is not established by a "one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no substantial connection or ongoing obligations there." *Boschetto,* 539 F.3d at 1019 (citation omitted).

Here, considering the parties' negotiations, contemplated future consequences, terms of the contract, and actual course of dealing, it is evident that Ott purposefully established minimum contacts with Oregon. The Employment Agreement establishes that Ott knew Plaintiff was an Oregon company. Ott negotiated with representatives of Plaintiff while they were in located in Oregon. Further, Ott had a continuing relationship with Plaintiff, a citizen of Oregon. Ott worked for two years as an employee of Plaintiff, during which time he regularly communicated with

Plaintiff in Oregon. Ott also received compensation and benefits from Plaintiff. This ongoing relationship between Plaintiff and Ott that arose from the Employment Agreement involved a "substantial connection" and was more than merely "random, fortuitous or attenuated." *Burger King*, 471 U.S. at 478. This is enough to establish the minimum contacts required for personal jurisdiction.

Further, the Employment Agreement created numerous ongoing obligations owed by Ott to Plaintiff. Ott was required to devote adequate time and effort to the performance of his duties under the Employment Agreement for two years. He agreed to assign any work product to Plaintiff that could not be considered owned by Plaintiff. He also undertook obligations relating to confidential information, trade secrets, and competitive conduct that continued during and well after the term of the Employment Agreement. These continuing obligations owed by Ott to Plaintiff satisfy the purposeful availment requirement. *See Ballard*, 65 F.3d at 1498.

### 2. Arising out of or relating to Ott's contacts with the Oregon

As discussed above, Ott's contacts with Oregon are related to the Employment Agreement that is the subject of this action. This is enough to satisfy the requirement that the claim arises out of Ott's contacts with Oregon. *See, e.g.*, *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914-15 (9th Cir. 1990); *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789-90 (9th Cir. 1987); *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, No. CV 09-661-MO, 2010 WL 596584, at *4 (D. Or. Feb. 12, 2010).

### 3. Reasonable and fair to assert jurisdiction

Where the previous two requirements are met, a strong presumption of jurisdiction exists and Ott "must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard*, 65 F.3d at 1500 (quoting *Burger King*, 471 U.S. at 477) (emphasis added in *Ballard*). Jurisdiction is unreasonable if it does not comport with the

Page 9 – OPINION AND ORDER

notion of fair play and substantial justice. *Burger King*, 471 U.S. at 476. The Ninth Circuit has identified seven specific factors to consider in making the reasonableness determination:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters*, 223 F.3d at 1088 (citation omitted).

This Court evaluates the seven reasonableness factors in this case as follows: (1) as discussed above, Ott purposefully injected himself into Oregon by creating a significant relationship with and ongoing obligations owed to an Oregon resident, and this weighs in favor of jurisdiction; (2) litigating in Oregon is burdensome on Ott and this factor weighs against jurisdiction; (3) adjudicating in Oregon does not present a conflict with the sovereignty of New Hampshire, and this factor weighs in favor of jurisdiction; (4) Oregon has an interest in adjudicating a dispute involving one of its residents who alleges it has suffered harm, and this weighs in favor of jurisdiction; (5) the focus of this factor is on the location of the evidence and the witnesses, *Menken v. Emm*, 503 F.3d 1050, 1060-61 (9th Cir. 2007), who will be located in Oregon, New Hampshire, Nevada, and California, so this factor is neutral; (6) this factor focuses on the convenience and effectiveness of relief for the plaintiff and is not of paramount importance in the Ninth Circuit. *Id* at 1061. Although this factor is not given much weight, it favors jurisdiction; and (7) the District of New Hampshire is an alternative forum, so this factor weighs against jurisdiction.

Weighing these seven considerations, on balance, favors a finding of personal jurisdiction. Although some factors weigh in Ott's favor, he fails to present a compelling case

that the exercise of jurisdiction in this Court would be unreasonable. *See Panavision*, 141 F.3d at 1324 ("[W]e conclude that although some factors weigh in [defendant's] favor, he failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable.").

**B.  Motion to Dismiss under *Forum Non Conveniens***

Ott filed a second motion to dismiss, relying on the common law doctrine of *forum non conveniens*. This doctrine allows a court to dismiss an action, even where venue is proper, if the defendant makes "a clear showing of facts which establish such oppression and vexation of a defendant so as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quotations and citation omitted). The moving party must prove "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favor dismissal." *Id*.

After the codification of 28 U.S.C. § 1404(a), the doctrine of *forum non conveniens* has limited application, as explained by the United States Supreme Court:

> The common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best. For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal quotations and citations omitted); *cf. Dole Food*, 303 F.3d at 1118 (under the doctrine of *forum non conveniens*, the "plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the *foreign country*") (emphasis added). Therefore, the doctrine of *forum non conveniens* is inapplicable here, where the alternate forum

is a sister federal court. As discussed below, the appropriate remedy in this case is to transfer the case to the United States District Court for the District of New Hampshire.

**C.  Motion to Transfer Venue under 28 U.S.C. § 1404(a)**

As an alternative to dismissal under *forum non conveniens*, Ott moves for a transfer under 28 U.S.C. § 1404(a) to the United States District Court for the District of New Hampshire. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Here, it is undisputed that this case could have been brought in the District of New Hampshire, so the issues to consider are the convenience of the parties and the interests of justice.

A defendant must make a "strong showing" of inconvenience to upset the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). A court must weigh multiple factors when considering a motion to transfer. *Jones,* 211 F.3d at 498. The weight accorded to each factor varies with the facts of each case and is left to the discretion of the court. *Decker Coal,* 805 F.2d at 843. Factors to consider may include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. . . . We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones*, 211 F.3d at 498-99.

Page 12 – OPINION AND ORDER

1.  **The location where the Employment Agreement was negotiated and executed**

This factor is neutral because the Employment Agreement was negotiated and executed in both New Hampshire and Oregon. Although it contemplated performance by Ott in New Hampshire, Plaintiff performed in Oregon by providing compensation, benefits, supervision, and other support.

2.  **The state most familiar with the governing law**

This factor supports transfer because the Employment Agreement provides that it is governed by New Hampshire law, and the courts in New Hampshire are more familiar with the application of New Hampshire law.

3.  **Plaintiff's choice of forum**

This factor does not support transfer because Oregon is Plaintiff's choice of forum. Generally, this factor is given great weight. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). A defendant need not, however, show the same level of inconvenience to upset the plaintiff's choice of forum under § 1404(a) as in a *forum non conveniens* analysis. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

4.  **The respective parties' contacts with the forum**

This factor supports transfer because although Ott has the minimum jurisdictional contacts with Oregon in that he created an ongoing relationship with an Oregon entity and undertook ongoing obligations to that entity, his direct contacts with Oregon are limited. Ott does not do business in Oregon, does not own property in Oregon, did not negotiate or perform under the Employment Agreement in Oregon, and has not travelled to Oregon in many years. In contrast, Plaintiff travelled to New Hampshire during the transaction with Ott, purchased the assets of a New Hampshire company, employed Ott in New Hampshire to perform duties there,

has an office and other employees in New Hampshire, and conducts business in New Hampshire. Further, the Employment Agreement states that it "is being made in the State of New Hampshire." Emp. Agm. ¶ 12. Thus, Plaintiff has more substantial contacts in New Hampshire than Ott has in Oregon, and this factor supports transfer.

5. **The contacts relating to Plaintiff's cause of action in the forum**

This factor slightly favors transfer. Plaintiff is an Oregon resident who suffered harm. Ott's contacts with Oregon are related to the Employment Agreement, which serves to meet the minimum jurisdictional threshold that the claim "arises out of" Ott's contacts with Oregon. Most of the contacts relating to Plaintiff's cause of action, however, are in New Hampshire, Nevada, and California. Plaintiff alleges that Ott improperly sold items into Nevada that were then sold into California. Ott was located in New Hampshire throughout these alleged improper transactions. Thus, there are slightly more significant contacts relating to Plaintiff's cause of action in New Hampshire than in Oregon.

6. **The difference in cost of litigation**

The cost to Ott of defending a case in Oregon is much greater than the cost to Plaintiff of prosecuting a case in New Hampshire. Ott has significant health issues that preclude him from travelling by air. Thus, the time and burden for Ott to travel from New Hampshire to Oregon to appear at court hearings and trial is greater than the time and burden for Plaintiff to travel to New Hampshire. Ott also has a seriously ill wife, for whom he is the primary caregiver. The cost of replacement care for Ott's wife while he is out of town for court hearings and trial in Oregon will be burdensome.

Additionally, the relative financial resources of the parties to absorb the costs of litigation is a consideration in a transfer of venue analysis. *See, e.g.*, *Jensen v. Simon & Schuster, Inc.*, No. 3:12-cv-00759-PK, 2012 WL 6839713, at *7 (D. Or. Dec. 12, 2012) (comparing the

financial resources of an individual plaintiff and a large corporation in evaluating a motion to transfer venue); *Peterson v. Nat'l Sec. Techs., LLC*, No. 12-CV-5025-TOR, 2012 WL 3264952, at *5 (E.D. Wash. Aug. 9, 2012) ("The court agrees that the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration. Indeed, the interests of justice require that the court consider whether financial constraints on either party could unfairly impact the outcome of the case.") (quotations and citations omitted); *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) ("[T]he balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it.") (citation omitted). Here, Ott is 84 years old, with significant personal medical issues and a terminally ill spouse, and without a steady income or much savings. Plaintiff is a multistate corporation and has not alleged any undue financial burden in litigating in New Hampshire. Plaintiff is more easily able to absorb the costs of litigation, and Ott's financial circumstances may significantly affect his ability to defend this suit if it is heard in Oregon. Thus, this factor strongly weighs in support of transfer.

### 7. The availability of compulsory process of non-party witnesses

The seventh factor is neutral because the non-party witnesses appear to be in California and Nevada, and thus there is no difference in compulsory process between litigating in New Hampshire and Oregon.

### 8. The ease of access to sources of proof

This factor slightly supports transfer because most of the relevant evidence and witnesses relating to Ott's alleged breach of the Employment Agreement appear to be located in New Hampshire, Nevada, and California. Plaintiff did not identify any key evidence or witnesses located in Oregon, although presumably some evidence and witnesses relating to the negotiation, execution, performance, and meaning of the Employment Agreement will be located in Oregon.

### 9. Public policy considerations of the forums

This factor is neutral because both Oregon and New Hampshire have an interest in adjudicating disputes involving their residents.

### 10. The health factor relating to Ott and his wife

This Court has discretion "to adjudicate motions for transfer according to individualized, case-by-case consideration of convenience and fairness." *Steward Org.*, 487 U.S. at 29 (quotations and citation omitted); *see also Jones*, 211 F.3d at 498. As the *Jones* court noted, the factors expressly identified are merely examples of factors a court may consider. *Jones*, 211 F.3d at 498. A court is not precluded from considering other factors that bear on convenience and fairness.

This Court finds there are additional facts in this case that bear heavily on the convenience and fairness of litigating this case in Oregon, and those facts are given considerable weight. Specifically, this Court is concerned by the poor health of Ott, his inability to travel by airplane, and his role as the primary caregiver to his terminally ill wife. These issues create significant inconvenience for Ott and may seriously limit his ability to participate in the defense of this case if it were litigated in Oregon. There is no countervailing difficulty for Plaintiff in litigating in New Hampshire. Consideration of serious health issues is appropriate in a motion to transfer venue. *See, e.g.*, *Elemary v. Philipp Holzmann A.G.,* 533 F. Supp. 2d 144, 153 (D.D.C. 2008) ("A moving party's medical disability can support a motion to transfer venue…") (citation omitted); *Hand v. Liberty Life Assurance Co. of Boston*, No. 07 C 1422, 2008 WL 4365954, at *2-3 (N.D. Ill. Mar. 31, 2008) (transferring a case pursuant to § 1404(a), in part because the defendant was an elderly gentleman with serious health problems and there was no countervailing difficulty on the plaintiff); *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005) (transferring a case pursuant to § 1404(a), in part because the defendant suffered from

Page 16 – OPINION AND ORDER

health problems and was advised by his physician not to travel); *BSB Bank & Trust Co. v. Morrison*, No. 02-CV-648, 2003 WL 1797845, at *3 (N.D.N.Y., Apr. 4, 2003) (transferring a case under § 1404(a), despite a forum selection clause, because of the significant medical problems of the defendants constituted exceptional circumstances). Ott's serious health problems and his role as caregiver to his terminally ill wife, in addition to the *Jones* factors discussed above, result in Ott making the required strong showing needed to upset Plaintiff's choice of forum.

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction (Dkt. 7) is DENIED. Defendant's motion to dismiss or transfer venue (Dkt. 11) is GRANTED in part and DENIED in part. Defendant's motion to dismiss pursuant to *forum non conveniens* is DENIED, and his motion to transfer venue pursuant to 28 U.S.C. §1404(a) is GRANTED. The Clerk of the Court is directed to transfer this action to the United States District Court for the District of New Hampshire and to mail a copy of this Opinion and Order to that court.

IT IS SO ORDERED.

Dated this 26th day of March, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge